Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XII

| LOURDES PACHECO PÉREZ<br><br>Parte Recurrida<br><br>v.<br><br>BREMEN AUTO GROUP, INC.; VÍCTOR SÁNCHEZ SÁNCHEZ, FULANA DE TAL Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS, MENGANO DE TAL, MENGANA DE TAL Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS; COMPAÑÍAS ASEGURADORAS X y Y<br><br>Parte Peticionaria | TA2025CE00754 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Caguas<br><br>Civil núm.: CG2023CV02104<br><br>Sobre: Despido constructivo, discrimen por edad, hostigamiento laboral, represalias |
|---|---|---|

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli.

Trigo Ferraiuoli, jueza ponente.

### SENTENCIA

En San Juan, Puerto Rico, a 24 de febrero de 2026.

Comparece la parte peticionaria, Bremen Auto Group, Inc., (Bremen o peticionaria) y solicita que revisemos la *Resolución* emitida y notificada el 16 de octubre de 2025, por el Tribunal de Primera Instancia, Sala de Caguas (TPI). Mediante el referido dictamen, el TPI declaró No Ha Lugar las solicitudes de sentencia sumaria presentadas por las partes.

La parte recurrida, Lourdes Pacheco Pérez, (Pacheco Pérez o recurrida), presentó su *Memorando en Oposición a la Expedición del Auto de Certiorari.*

Por los fundamentos que exponemos a continuación, expedimos el auto solicitado y se modifica la resolución recurrida.

## I. Trasfondo fáctico y procesal

### A. Querella

El 27 de junio de 2023, Pacheco Pérez presentó una querella[1] en contra de Bremen, Víctor Sánchez y otros. En esta, incluyó varias causas de acción[2] contra su patrono. En síntesis, alegó que trabajó como empleada regular para Bremen por ocho (8) años y que la empresa inició un patrón de discrimen, acoso laboral y represalias en su contra. En específico, Pacheco Pérez expuso que, en <u>enero de 2021</u>, fue víctima de un incidente de hostigamiento sexual por parte de uno de sus supervisores. Luego de varias quejas por parte de Pacheco Pérez, Bremen despidió a dicho supervisor. Posterior a ello, la recurrida indicó que estuvo fuera por enfermedad desde <u>agosto de 2022 hasta el 17 de octubre de 2022</u>. También alegó que la Sra. Karla Encarnación Saiter fue nombrada supervisora en Bremen el 14 de septiembre de 2022 y que fue asignada como su supervisora directa. Pacheco Pérez arguyó que, a partir de su regreso, fue objeto de un patrón de discrimen y acoso laboral. También, indicó que en el ambiente de trabajo se creaban situaciones para provocar burlas hacia su persona por razón de su edad y el desempeño en sus labores.

La recurrida esgrimió que, el <u>1 de febrero de 2023</u> acudió ante la *Equal Employment Opportunity Commission (EEOC)* y presentó una querella en contra de Bremen. Alegó que, una vez presentada la querella, Bremen intensificó su patrón de acoso y discrimen. También planteó que, como consecuencia del acoso laboral sufrido, tuvo que recibir tratamiento médico y que no tuvo otra alternativa

---

[1] Entrada Núm. 1 de SUMAC TPI.

[2] La querellante presentó su reclamación amparada en los siguientes estatutos laborales: Despido injustificado en la modalidad de despido constructivo bajo la Ley Núm. 80-1976, conocida como *Ley Sobre Despidos Injustificados* (Ley 80); Represalias bajo la Ley Núm. 115-1991, conocida como Ley de Represalias contra empleados (Ley 115); Discrimen por edad bajo la Ley Núm. 100-1959, conocida como Ley contra el Discrimen en el empleo (Ley 100); Acoso laboral bajo la Ley Núm. 90-2020, conocida como Ley para Prohibir y Prevenir el Acoso Laboral en Puerto Rico (Ley 90) y daños y perjuicios.

que someter su renuncia el <u>1 de marzo de 2023</u>. Por ello, solicitó se declarara con lugar la querella y se le concedieran los remedios provistos al amparo de las causas de acción instadas, así como una compensación por los daños y perjuicios sufridos, daños punitivos, costas y honorarios de abogado. El 11 de agosto de 2023, Bremen contestó la querella[3].

## B. Solicitud de Sentencia Sumaria de Bremen

Luego de numerosos incidentes procesales y habiendo concluido el descubrimiento de prueba, el 7 de mayo de 2025, Bremen presentó una *Moción en Solicitud de Sentencia Sumaria[4]*. **En resumen, expuso que, luego de haberse completado el descubrimiento de prueba, Pacheco Pérez no contaba con evidencia alguna para prevalecer en su reclamación.** Además, señaló que Pacheco Pérez no agotó el procedimiento establecido en la Ley Núm. 90-2020, *supra*, y en las *Guías sobre el Acoso Laboral en el Sector Privado de Puerto Rico*, para que el TPI tuviera jurisdicción para entender sobre la causa de acción de acoso laboral.

El 30 de mayo de 2025, Pacheco Pérez presentó su oposición[5]. Argumentó que no procedía que se dictara sentencia sumaria a favor de Bremen, pues existían asuntos en controversia. En cuanto a la alegación de que no acudió primero al Negociado de Métodos Alternos conforme exige la Ley 90-2020, *supra*, arguyó que el patrono estaba obligado a establecer una política de acoso laboral en el empleo y que Bremen no la tenía, por lo que desconocía cuál era el procedimiento adecuado para presentar su queja por acoso laboral.

---

[3] Entrada Núm. 7 de SUMAC-TPI.

[4] Entrada Núm. 66 de SUMAC-TPI. Junto a su escrito, Bremen acompañó los siguientes documentos: Anejo #2-1era parte de la deposición de la Sra. Pacheco. Anejo #3-Deposición de la Sra. Encarnación. Anejo #4-2da parte de la deposición de la Sra. Pacheco. Anejo #5-Deposición del Sr. Sánchez. Anejo #6-Deposición del Sr. Hernández. Anejo #7-Querell[a] EEOC. Anejo #1- 1era parte de la Contestación a Interrogatorio. Anejo #1-2da parte de la Contestación a Interrogatorio.

[5] *Oposición a Moción Solicitando de Sentencia Sumaria*, Entrada Núm. 76 de SUMAC-TPI. Junto a esta acompañó Anejo 1-Deposición de la Sra. Lourdes Pacheco Pérez (Continuación) del 25 de junio de 2024.

Sobre la reclamación de <u>discrimen por edad</u>, Pacheco Pérez alegó que se sintió humillada, discriminada y angustiada por un incidente ocurrido durante un intercambio de regalos (amigo secreto) en una fiesta de Navidad. Arguyó que no presentó una queja porque Bremen no tenía una política anti-discrimen, por lo que desconocía el procedimiento para hacer una reclamación.

En cuanto a la reclamación sobre <u>represalias</u>, Pacheco Pérez expuso que, posterior a la presentación de la queja ante la EEOC, fue reunida por el Sr. Sánchez y el Sr. Hernández y que le prohibieron tener comunicación alguna con empleados o compañeros de trabajo y que tampoco podía intervenir en ningún negocio. Por lo anterior, alegó que, luego de dicha reunión, no tuvo otra opción que presentar su renuncia. Indicó que Bremen falló en probar que no hubo acoso laboral en su contra.

**C. Solicitud de Sentencia Sumaria de Pacheco Pérez**

Por otro lado, Pacheco Pérez presentó su solicitud de sentencia sumaria el 20 de mayo de 2025[6]. En síntesis, adujo que procedía que se dictara sentencia sumaria a su favor debido a que no existía controversia sobre los hechos medulares, esenciales y pertinentes; y que Bremen no controvirtió los mismos.

El 10 de junio de 2025, Bremen presentó una extensa oposición a la solicitud de sentencia sumaria de Pacheco Pérez, en la que expuso e hizo referencia a los argumentos ya vertidos en su solicitud de sentencia sumaria y reiteró que la querellante no tenía evidencia sustancial que sustentara sus alegaciones, por lo que procedía dictar sentencia sumaria a favor de Bremen y desestimar

---

[6] *Moción en Solicitud de Sentencia Sumaria.* Entrada Núm. 74 de SUMAC-TPI. Junto a esta, Pacheco Pérez acompañó los siguientes anejos: Anejo 1: Querella; Anejo 2-Contestacion a la demanda; Anejo 3-Toma de Deposición del Sr. Víctor M. Sánchez Sánchez; Anejo 4-Toma de Deposición del Sr. Juan C. Hernández Ortiz; Anejo 5-Contestación a Primer Pliego de Interrogatorios, Requerimiento de Admisiones y Solicitud de Producción de Documentos de Bremen Auto Group; Anejo 6-Contestación al Interrogatorio de Bremen Auto Group, LLC; Anejo 7-Manual del Empleado, Normas y Procedimientos; Anejo 8-Declaración Jurada de Karla Encarnación Saiter; Anejo 9-Deposición de la Sra. Lourdes Pacheco Pérez (Continuación) 25 de junio de 2024.

la querella en su totalidad. Cada parte replicó las oposiciones de sentencia sumaria de la parte contraria[7]. El 26 de agosto de 2025, el TPI celebró una vista argumentativa en la que ambas partes presentaron sus planteamientos.[8]

Sometido el asunto, el 16 de octubre de 2025, el TPI emitió la resolución recurrida. El TPI consignó 38 hechos incontrovertidos, de los que transcribimos aquellos relevantes a la controversia ante nos:

1. La Sra. Pacheco es mayor de edad, soltera, ejecutiva de ventas y vecina de Caguas, Puerto Rico.

2. Bremen es una corporación doméstica con fines de lucro, autorizada a hacer negocios en el Estado Libre Asociado de Puerto Rico, registrada en el Departamento de Estado bajo el número de registro 158501, desde el 13 de diciembre de 2005.

[…]

5. La Sra. Pacheco laboró para Bremen, un concesionario de autos usados desde el 8 de agosto de 2016 hasta el 1 de marzo de 2023.

6. La Sra. Pacheco firmó el acuse de recibo del Manual de Empleados Normas y Procedimiento[s] el 14 de diciembre de 2016.

7. La Sra. Pacheco contaba con un Manual de Empleados y Normas y Procedimientos.

8. El Manual de Empleados Normas y Procedimientos, prohíbe y, a su vez, establece que se penalizará a los empleados que incurran en actos de insubordinación.

9. El Manual de Empleados, Normas y Procedimientos establece que los empleados podrán ser amonestados si no cumple[n] con su horario establecido.

10. La Sra. Pacheco firmó el acuse de recibo de Política de Registro y Asistencia el 11 de diciembre de 2020.

11. La Sra. Pacheco contaba con una Política de Registro y Asistencia.

12. La política de Registro y Asistencia establece que, de incumplirse la misma, el empleado estará sujeto a la imposición de amonestaciones escritas en las primeras ocasiones y hasta una suspensión de empleo y sueldo en la tercera ocasión.

[…]

15. Las funciones de la Sra. Pacheco eran vender autos, cumplir con la cuota de ventas establecida y prospectar

---

[7] Entrada Núm. 90 y 97 SUMAC-TPI.
[8] Entrada Núm. 99 SUMAC-TPI.

clientes, lo que incluía llamar a los clientes, a los clientes citados y a los clientes referidos.

[...]

16. Como vendedora, la Sra. Pacheco tenía que cumplir con una cuota de venta de siete (7) autos al mes.

18. La Sra. Karla Encarnación Saiter era la Gerente de Ventas de Bremen.

19. Cuando la Sra. Karla Encarnación Saiter comenzó a laborar en Bremen, le redujo la cuota de ventas con la cual la Sra. Pacheco tenía que cumplir mensualmente.

20. La Sra. Karla Encarnación Saiter podía tomar medidas disciplinarias hacia la Sra. Pacheco, con la aprobación del Sr. Juan Carlos Hernández o del Sr. Sánchez, así como sin su aprobación.

[...]

24. La Sra. Pacheco admitió que fue amonestada el 2 de marzo de 2017, por incumplimiento con las cuotas de venta.

25. La Sra. Pacheco admitió que fue amonestada el 3 de septiembre de 2021, por incumplimiento con las cuotas de venta.

26. La Sra. Pacheco admitió que estuvo suspendida desde el 2 de agosto de 2021 hasta el 10 de agosto de 2021.

27. La Sra. Pacheco admitió, que fue amonestada por escrito el 26 de junio de 2018, por incumplimiento con la cuota de llamadas.

28. La Sra. Pacheco admitió, que fue amonestada por escrito el 26 de junio de 2018, por incumplimiento con el horario de entrada, almuerzo y salida.

29. La Sra. Pacheco fue amonestada por escrito el 14 de junio de 2021, por un patrón de tardanzas.

30. La Sra. Pacheco fue amonestada por escrito el 23 de julio de 2021, por incurrir en conducta impropia, desacreditando a la empresa, sus servicios y personal.

[...]

33. Entre el año 2017 y 2023, año en que la Sra. Pacheco renunció, esta fue amonestada en dos (2) ocasiones debido a incumplimientos con la cuota de ventas.

[...]

35. La Sra. Pacheco presentó una querella administrativa ante la EEOC el 1 de febrero de 2023.

[...]

38. La Sra. Pacheco renunció mediante carta escrita con fecha del 1 de marzo de 2023.

Por otro lado, el TPI emitió 12 hechos en los que sí existían controversia, los cuales se transcriben a continuación:

1. Relación, si alguna, de la situación de acoso sexual en contra de la Sra. Pacheco con los hechos alegados en el presente caso.

2. Ambiente de trabajo en Bremen, si cambió el mismo, a partir de qué momento y qué motivó el cambio.

3. Desempeño de la Sra. Pacheco y evaluaciones formales de sus ejecutorias.

4. Razones/Causas para la imposición de trece (13) amonestaciones y las medidas disciplinarias tomadas por el patrono en cada una de ellas.

5. Reuniones, si alguna, sostenidas con la Sra. Pacheco, con relación a las situaciones que motivaron la imposición de las referidas amonestaciones.

6. Instancias en que la Sra. Pacheco acudió ante la división de Recursos Humanos de Bremen y/o administración para llevar sus preocupaciones sobre el alegado ambiente de trabajo y récords administrativos, si alguno, que éstos tuviesen de las mismas.

7. Investigación y medidas, si algunas, tomadas para atender las alegaciones de la Sra. Pacheco.

8. Relación, si alguna, de la Sra. Karla Encarnacion Saiter con los hechos alegados en el presente caso.

9. Relación, si alguna, del Sr. Juan Carlos Hernández con los hechos del caso.

10. Edad de los empleados de Bremen al momento de los hechos.

11. Imposición de amonestaciones/sanciones disciplinarias a otros empleados, si algunas.

12. Relación de la licencia por enfermedad, si alguna, con los hechos del caso.

En resumen, el TPI concluyó que existían controversias sobre hechos medulares que ameritaban dilucidarse en un juicio en su fondo. Por lo anterior, el TPI entendió que era necesario analizar la totalidad de las circunstancias y denegó las solicitudes de sentencia sumaria de ambas partes.

Inconforme, Bremen acude ante este foro y le imputa al foro primario los siguientes señalamientos de error:

1. Erró el TPI en no expresarse y desestimar la causa de acción al amparo de la Ley Núm. 90 de 7 de agosto de 2020, según enmendada por falta de jurisdicción sobre la materia.

2. Erró el TPI al no declarar con lugar la Moción de Sentencia Sumaria presentada por el Sr. Sánchez y Bremen Auto[,] la totalidad de la reclamación en contra del Co-demandado el Sr. Víctor Sánchez (sic), toda vez que aplicó incorrectamente el derecho a los hechos que encontró incontrovertidos en su Resolución.

3. Erró el TPI al no desestimar la totalidad de la reclamación de la parte peticionada cuando surge de la documentación Y evidencia anejada una insuficiencia de prueba que le impide prevalecer en su reclamo de despido constructivo, acoso laboral, discrimen por razón de edad y represalias.

4. Erró el TPI al emitir una Resolución la cual está fundamentada y amparada en unos alegados hechos de acoso sexual que están prescritos y no son parte del reclamo de la peticionada.

Con el beneficio de la comparecencia de ambas partes, estamos en posición de resolver.

## II.   Exposición del Derecho

### A.   Certiorari

El auto de *certiorari* es el vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones interlocutorias realizadas por un foro inferior.  La expedición del auto descansa en la sana discreción del tribunal.[9]

En los casos civiles, la Regla 52.1 de Procedimiento Civil[10], delimita las instancias en las que procede que este Tribunal de Apelaciones expida el recurso de *certiorari.*[11] La citada Regla establece que el recurso sólo se expedirá cuando se recurra de una orden o resolución bajo remedios provisionales de la Regla 56, *injunctions,* de la Regla 57, o de la denegatoria de una moción de carácter dispositivo.  Por excepción, y en el ejercicio discrecional del foro apelativo, se podrá expedir el recurso cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos

---

[9] *Caribbean Orthopedics v. Medshape et al.,* 207 DPR 994, 1004 (2021); *800 Ponce De León v. AIG,* 205 DPR 163, 174 (2020).
[10] 32 LPRA Ap. V, R. 52.1.
[11] *Caribbean Orthopedics v. Medshape et al.,* supra.; *Scotiabank v. ZAF Corp.,* 202 DPR 478, 486 (2019).

esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, casos de relaciones de familia, casos revestidos de interés público o cualquier otra situación, en la que esperar por una apelación constituiría un fracaso irremediable de la justicia. Según lo dispuesto en la Regla 52.1, *supra*, al denegar la expedición de un recurso de *certiorari*, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Ahora bien, aun cuando un asunto esté comprendido dentro de las materias que podemos revisar de conformidad con la Regla 52.1, *supra*, para poder ejercer debidamente nuestra facultad revisora es menester evaluar si, a la luz de los criterios enumerados en la Regla 40 de nuestro Reglamento[12], se justifica nuestra intervención. Estos criterios son:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Es decir, la Regla 52.1 de Procedimiento Civil, *supra*, enumera en forma taxativa aquellas instancias en las cuales el Tribunal de Apelaciones no acogerá una petición de *certiorari*, mientras que la

---

[12] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 63, 215 DPR __ (2025).

Regla 40 del Reglamento del Tribunal de Apelaciones guía la discreción de este foro en aquellos asuntos en los que sí se permite entender.[13]

Ello impone a este Tribunal la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del foro de instancia, de forma que no se interrumpa injustificadamente el curso corriente de los casos ante ese foro.[14] Por tanto, de no estar presente ninguno de los criterios esbozados, procede abstenernos de expedir el auto solicitado.

En fin, este Tribunal no habrá de intervenir con el ejercicio de la discreción del Tribunal de Primera Instancia, salvo en "un craso abuso de discreción o que el tribunal [haya actuado] con prejuicio y parcialidad, o que se [haya equivocado] en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial".[15]

### B. La Sentencia Sumaria por insuficiencia de prueba

El mecanismo de sentencia sumaria, regulado por la Regla 36 de Procedimiento Civil[16] permite al tribunal disponer de un caso sin celebrar vista en su fondo.[17]

La Regla 36.1 de Procedimiento Civil[18], establece que una moción de sentencia sumaria debe estar fundada en declaraciones juradas, o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes.[19] Por

---

[13] *Torres González v. Zaragosa Meléndez,* 211 DPR 821, 849 (2023).

[14] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008).

[15] *Lluch v. España Service Sta.,* 117 DPR 729, 745 (1986). Véase, además, *Cruz Flores et al. v. Hosp. Ryder et al.,* 210 DPR 465, 497 (2022); *Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000).

[16] 32 LPRA Ap. V, R. 36.

[17] *SLG Fernández-Bernal v. RAD-MAN et al.,* 208 DPR 310, 334 (2021); *León Torres v. Rivera Lebrón,* 204 DPR 20, 41 (2020); *Abrams Rivera v. E.L.A.,* 178 DPR 914, 932 (2010); *Nieves Díaz v. González Massas,* 178 DPR 820, 847 (2010); *Ramos Pérez v. Univisión,* 178 DPR 200, 213 (2010).

[18] 32 LPRA Ap. V, R. 36.1.

[19] *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, pág. 335; *Rodríguez García v. UCA,* 200 DPR 929, 940 (2018).

tanto, el Tribunal podrá dictar sentencia sumaria si de las alegaciones, deposiciones, contestaciones, interrogatorios y admisiones ofrecidas, junto a las declaraciones juradas, si las hubiere, surge que no exista ninguna controversia real sobre los hechos materiales y esenciales del caso y solo resta por resolver una controversia de estricto derecho.[20]

En otro extremo, la sentencia sumaria resulta improcedente cuando: (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial, o (4) como cuestión de derecho, no proceda.[21]

La parte promovida tiene el deber de refutar los hechos alegados, con prueba que controvierta la exposición de la parte que solicita la sentencia sumaria.[22] En este sentido, la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación. Dicha parte está obligada a controvertir la moción de su adversario de forma tan detallada y específica como lo ha hecho el promovente en su solicitud, ya que, de no hacerlo, corre el riesgo de que se dicte sentencia sumaria en su contra, de proceder en derecho.[23]

Sin embargo, el hecho de que la otra parte no presente prueba que controvierta la evidencia presentada por la parte promovente de la moción de sentencia sumaria, no implica necesariamente que

---

[20] 32 LPRA Ap. V, R. 36.3(e); *León Torres v. Rivera Lebrón,* supra; *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013); *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 299 (2012); *Ramos Pérez v. Univisión*, supra, pág. 214; *González Aristud v. Hosp. Pavía*, 168 DPR 127, 137-138 (2006).

[21] *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, págs. 335-336; *Mejías et al. v. Carrasquillo et al.*, supra, pág. 299; *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 DPR 714 (1986).

[22] *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, pág. 336; *León Torres v. Rivera Lebrón,* supra, pág. 44; *Ramos Pérez v. Univisión*, supra, pág. 215.

[23] *León Torres v. Rivera Lebrón,* supra, pág. 43.

dicha moción procederá automáticamente si realmente existe una controversia sustancial sobre hechos esenciales y materiales.[24]

Asimismo, toda inferencia que se haga de los hechos incontrovertidos debe hacerse de la manera más favorable a la parte que se opone a la misma.[25] A tono con este principio, el Tribunal Supremo ha indicado que, "[a]l considerar la moción de sentencia sumaria se tendrán como ciertos los hechos no controvertidos que consten en los documentos y las declaraciones juradas ofrecidas por la parte promovente."[26]

En el caso de un foro apelativo, este debe utilizar los mismos criterios que el tribunal sentenciador al determinar si procede dictar sentencia sumaria, sin embargo: (1) sólo puede considerar los documentos que se presentaron ante el foro de primera instancia; y (2) sólo puede determinar si existe o no alguna controversia genuina de hechos materiales y si el derecho se aplicó de forma correcta.[27]

Así pues, por estar en la misma posición que el foro primario al momento de revisar las solicitudes de sentencia sumaria, el Tribunal Supremo de Puerto Rico estableció un estándar específico, que, como foro apelativo, debemos utilizar. A tales efectos, en *Meléndez González, et al. v. M. Cuebas*[28], indicó que, de entrada, debemos revisar que tanto la moción de sentencia sumaria, así como su oposición, cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil.[29] Subsecuentemente, si existen hechos materiales controvertidos, "el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró

---

[24] *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, pág. 337.

[25] *Mejías et al. v. Carrasquillo et al.*, supra, pág. 300; *Corp. Presiding Bishop CJC of LDS v. Purcell,* supra, pág. 721.

[26] *Piñero v. A.A.A.*, 146 DPR 890, 904 (1998).

[27] *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, págs. 337-338; *Const. José Carro v. Mun. Dorado,* 186 DPR 113, 129 (2012).

[28] 193 DPR 100 (2015).

[29] *Íd.,* pág. 118.

que están en controversia y cuáles están incontrovertidos".[30] Por el contrario, si encontramos que los hechos materiales del caso son incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente la norma jurídica aplicable a la controversia que tuvo ante sí.[31]

El modelo de sentencia sumaria por insuficiencia de prueba fue adoptado por el Tribunal Supremo en *Medina v. M.S. & D. Química P.R., Inc.*[32]. Esta modalidad procede cuando la parte demandante no cuenta con evidencia suficiente para probar su caso.[33] Específicamente, el promovente debe establecer que: (1) el juicio en su fondo es innecesario; (2) el demandante no cuenta con evidencia suficiente para probar algún hecho esencial a su reclamación; y, (3) como cuestión de derecho, procede la desestimación de la reclamación.[34]

No obstante, para disponer de un pleito por dicho fundamento es indispensable que se le haya brindado a la parte promovida amplia oportunidad para realizar un descubrimiento de prueba y que se demuestre que la prueba descubierta no satisface los elementos necesarios para establecer su causa de acción.[35] Por su lado, la parte promovida no puede evitar tal solicitud "por el mero pretexto de que, a pesar de no contar con evidencia suficiente para probar un elemento indispensable para su reclamación, merece su 'día en corte'"[36].

Así que, para derrotar una moción de sentencia sumaria bajo la modalidad de la insuficiencia de la prueba, la parte promovida puede, entre otras cosas presentar con su oposición una prueba admisible en evidencia o una prueba que pueda convertirse en

---

[30] *Íd.*, pág. 119.
[31] *Íd.*
[32] 135 DPR 716 (1994).
[33] *Rodríguez Méndez v. Laser Eye*, 195 DPR 769, 786 (2016).
[34] *Íd.*
[35] *Íd.,* pág. 787.
[36] *Íd.*

admisible – aunque de momento no lo sea – o que dé lugar a una prueba admisible que demuestre que existe evidencia para probar los elementos esenciales de su caso; que hay prueba en el récord que puede convertirse en una prueba admisible que derrotaría la contención de insuficiencia del promovente; que la moción es prematura porque el descubrimiento es inadecuado, está a medias o no se ha realizado, o que éste, por su naturaleza, no es un caso que conviene que se resuelva por el mecanismo expedito de la sentencia sumaria.[37]

Valga apuntar que, a la modalidad de sentencia sumaria por insuficiencia de la prueba le aplican todos los principios que deben utilizarse por los tribunales al resolver una solicitud de sentencia sumaria.[38] Por ello, podrá dictarse sentencia sumaria solamente cuando no exista ninguna controversia real sobre los hechos materiales y esenciales del caso[39] y, además, si en derecho procede el reclamo.[40] "[C]uando existe duda sobre si hay o no prueba suficiente o si hay una controversia de hecho, esta duda debe resolverse en favor de la parte promovida"[41].

Así pues, el mecanismo de sentencia sumaria es un remedio discrecional que procederá solo cuando el tribunal quede claramente convencido de que tiene ante sí documentos no controvertidos, que no existen controversias sobre hechos materiales y esenciales, y que, por lo tanto, lo que resta es aplicar el derecho, ya que una vista en los méritos resultaría innecesaria.[42]

---

[37] *Medina v. M.S. & D. Química P.R., Inc.,* supra, pág. 734.
[38] *Íd.*
[39] Un hecho material "es aquel que puede afectar el resultado de la reclamación de acuerdo al derecho sustantivo aplicable". *Ramos Pérez v. Univisión,* 178 DPR 200, 213 (2010). A su vez, la controversia relacionada a un hecho material debe ser real, "por lo que cualquier duda es insuficiente para derrotar una Solicitud de Sentencia Sumaria". *Íd.*, págs. 213-214.
[40] *SLG Zapata-Rivera v. J.F. Montalvo,* supra.
[41] *Medina v. M.S. & D. Química P.R., Inc.,* supra.
[42] *Vera v. Dr. Bravo,* 161 DPR 308, 334 (2004). Véase, además, *González Santiago v. Baxter Healthcare,* 202 DPR 281, 290 (2019); *Pérez Vargas v. Office Depot,* 203 DPR 687, 699 (2019).

Hay que señalar que una sentencia sumaria, por constituir una decisión en los méritos es el precedente de cosa juzgada[43] cuando se opone entre partes debidamente relacionadas.[44] Por ello, se ha advertido que, antes de resolver una controversia por la vía sumaria, el juzgador habrá de discernir cuidadosamente al respecto, pues "mal utilizada, puede prestarse para despojar a un litigante de su 'día en corte', principio elemental del debido proceso de ley"[45].

### C. La Ley Núm. 90-2020

Con la aprobación de la *Ley para Prohibir y Prevenir el Acoso Laboral en Puerto Rico* se creó una causa de acción a favor de los empleados y empleadas que son víctimas de acoso laboral en su lugar de empleo.[46] En específico, esta legislación declara "una vigorosa política pública contra todo tipo de acoso laboral que afecte el desempeño del trabajador, altere la paz industrial y atente contra la dignidad de los trabajadores, no importa cuál sea su categoría o clasificación de empleo".[47] Sus disposiciones amparan a aquellos trabajadores, sin importar la naturaleza del empleo, su categoría, jerarquía o clasificación, ni la duración del contrato de empleo, que sean objeto de la conducta denominada como acoso laboral.[48]

En lo aquí pertinente, el Artículo 5 dispone que todo patrono adoptará e implementará las políticas internas necesarias a los fines de prevenir, desalentar y evitar el acoso laboral en sus centros de trabajo, así como también investigará todas las alegaciones sobre el particular e impondrá las sanciones correspondientes en aquellos casos en que procedan.[49]

---

[43] El efecto de la aplicación de la doctrina de cosa juzgada es que la sentencia emitida en un pleito anterior impide que se litiguen posteriormente, entre las mismas partes y sobre las mismas causas de acción y cosas, las controversias ya litigadas y adjudicadas, y aquellas que se pudieron haber litigado. *Mun. De San Juan v. Bosque Real, S.E.,* 58 DPR 743, 769 (2003).
[44] *Vera v. Dr. Bravo*, supra, pág. 335.
[45] *González v. Alicea, Dir. Soc. Asist. Legal,* 132 DPR 638, 646-647 (1993).
[46] Conocida como la Ley Núm. 90 de 7 de agosto de 2020, 29 LPRA § 3111.
[47] Véase 29 LPRA § 3112.
[48] 29 LPRA § 3113.
[49] 29 LPRA § 3115.

Por otro lado, el Artículo 10 le impone al empleado el deber de agotar los remedios allí dispuestos como condición *previa* a presentar una querella por acoso laboral ante el Tribunal de Primera Instancia.[50] Dicho artículo lee como sigue:

> Toda persona que reclame ser víctima de acoso laboral deberá comunicarlo siguiendo el procedimiento y protocolo adoptado por su patrono, el cual, según ya dispuesto, deberá ser amparado en las guías uniformes establecidas por el Departamento del Trabajo y Recursos Humanos [...].

> Si las gestiones realizadas conforme al procedimiento y protocolo adoptado por el patrono resultan infructuosas, **el empleado afectado acudirá al Negociado de Métodos Alternos para la Solución de Conflictos de la Rama Judicial. Si habiéndose orientado, las partes no aceptan la mediación o el mediador no recomienda la misma, entonces se podrá acudir ante la sala del tribunal competente presentando evidencia acreditativa de que se agotó dicho mecanismo alterno y radicar la acción civil que provee este capítulo.**[51]

**III. Aplicación del Derecho a los Hechos**

La Regla 52.1 de Procedimiento Civil, *supra*, nos faculta a expedir el auto de *certiorari* cuando se recurre de la denegatoria de una moción de carácter dispositivo, como lo es una moción de sentencia sumaria.[52] En virtud de ello, ejercemos nuestra discreción y expedimos el auto solicitado.

Según expuesto, este Tribunal de Apelaciones se encuentra en la misma posición que el TPI al momento de revisar una solicitud de sentencia sumaria. Así, el primer y segundo paso del estándar que este Tribunal debe utilizar para revisar la concesión o denegatoria de una solicitud de sentencia sumaria es una revisión de *novo* del expediente del caso de epígrafe y corroborar que tanto la solicitud como la oposición a sentencia sumaria cumplan con los requisitos de la Regla 36 de Procedimiento Civil.[53] Tras revisar sendas solicitudes de sentencia sumaria, concluimos que los escritos

---

[50] 29 LPRA § 3120.

[51] 29 LPRA § 3120. Énfasis nuestro.

[52] Entre las mociones de carácter dispositivo, cuya denegatoria por el foro primario permite el ejercicio de nuestra función revisora, se encuentran la moción de desestimación, de desistimiento, de sentencia sumaria o de sentencia por las alegaciones. *Rivera Figueroa v. Joe's European Shop,* 183 DPR 580, 594 (2011).

[53] Regla 36 de Procedimiento Civil, *supra.*

cumplieron con los requisitos de forma establecidos en la precitada regla. Ambas partes propusieron los hechos que a su juicio están incontrovertidos, junto a los documentos en apoyo. De igual forma, ambos cumplieron con la Regla 36.3 (b) de Procedimiento Civil al oponerse.[54]

Para el tercer y cuarto paso de nuestro análisis debemos evaluar si existen hechos materiales en controversia y, de existir, delimitarlos. De no haber hechos en controversia, procede que revisemos de *novo* si el foro primario aplicó correctamente el Derecho. Por tanto, este Tribunal solo puede considerar los documentos que se presentaron ante el TPI y determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de manera correcta. Aclarado lo anterior, luego de analizar las solicitudes de sentencia sumaria y oposiciones presentadas por ambas partes, concluimos que los hechos incontrovertidos esbozados por el TPI están apoyados en la prueba que obra en autos. A esos fines, corresponde determinar si los hechos incontrovertidos apuntados por el TPI son suficientes para adjudicar las causas de acción presentadas por Pacheco Pérez. Veamos.

En el presente caso, Bremen alega que Pacheco Pérez renunció de forma voluntaria el 1 de marzo de 2023 y que no se configuró un despido constructivo. Por su parte, Pacheco Pérez alega que los motivos de su renuncia obedecen al patrón de acoso y hostigamiento y discrimen sufrido, el cual se intensificó luego que esta presentara una querella ante la EEOC un mes antes de su renuncia.

Tal cual concluyó el TPI, el hecho de que a Pacheco Pérez se le hicieran amonestaciones a lo largo de su periodo como empleada

---

[54] Regla 36.3 (b) de Procedimiento Civil, *supra*.

de Bremen, de ninguna manera excluye las alegaciones relacionadas a las circunstancias y motivaciones para que presentara su renuncia. Por ello, al evaluar si la renuncia en el presente caso equivale o no a un despido constructivo, resulta esencial auscultar las razones que motivaron dicha renuncia, por lo que el TPI no incidió al determinar que dicha controversia ameritaba dilucidarse en un juicio en su fondo.

De igual forma, el foro *a quo* determinó que existen controversias medulares respecto a las represalias alegadas por Pacheco Pérez como consecuencia de la querella presentada ante la EEOC, así como los incidentes, actuaciones y comentarios en torno a la edad y apariencia de la recurrida. Así que, luego de revisar *de novo* el expediente, concluimos que los hechos incontrovertidos consignados en el dictamen recurrido resultan insuficientes para disponer por la vía sumaria la reclamación de despido constructivo, discrimen por edad y represalias.

Ahora bien, en su primer señalamiento de error, Bremen afirma que el TPI incidió al no expresarse y desestimar la causa de acción de acoso laboral al amparo de la Ley Núm. 90-2020, supra. Le asiste la razón.

Conforme expusimos en la segunda parte del presente escrito, el Artículo 10 de la Ley 90-2020, *supra*, le impone al empleado un procedimiento a seguir antes de que presente una causa de acción al amparo de dicha ley en el tribunal competente. Primero, el empleado debe comunicar el acoso siguiendo el procedimiento y protocolo adoptado por su patrono. En segundo lugar, el artículo expresa que, si dicha gestión resulta infructuosa, el empleado acudirá ante el Negociado de Métodos Alternos para la Solución de Conflictos de la Rama Judicial[55]. Una vez realizada dicha gestión, y

---

[55] *Íd.*

luego de haberse orientado, las partes no aceptan la mediación o el mediador no recomienda la misma, entonces se podrá acudir ante el tribunal presentando evidencia acreditativa de que se agotó dicho mecanismo alterno y radicar la acción civil que provee esta Ley[56].

Por consiguiente, ante el planteamiento de Bremen sobre el agotamiento de mecanismo alterno preceptuado en la Ley 90, *supra,* el foro de instancia debió ponderar si Pacheco Pérez cumplió o no con el Artículo 10 de la citada ley. Del dictamen recurrido no surge que el foro primario hiciera determinación respecto a este asunto. Del expediente, escritos y documentos presentados por las partes tampoco encontramos prueba acreditativa de que Pacheco Pérez cumpliera con el requisito de acudir ante el Negociado de Métodos Alternos, previo a instar su reclamación bajo la Ley 90, *supra*. En efecto, la recurrida reconoció que no cumplió con dichas gestiones porque desconocía el procedimiento ante la falta de política de acoso laboral de Bremen. En vista de lo anterior, y ante el hecho de que, habiendo concluido el descubrimiento de prueba, Pacheco Pérez no aportó prueba que satisfaga los elementos necesarios para sostener la causa de acción[57] al amparo de la Ley 90, *supra,* procedía desestimar la causa de acción de acoso laboral.

**IV. Parte Dispositiva**

Por lo antes expresado, **expedimos** el auto de *certiorari* y **modificamos** la *Resolución* a los únicos fines de desestimar la causa de acción de acoso laboral bajo la Ley Núm. 90-2020. Así modificada, se confirma, y devolvemos el caso al foro de instancia para la continuación de los procedimientos acorde con lo aquí resuelto.

**Notifíquese.**

---

[56] *Íd.*
[57] Véase, *Rodríguez Méndez v. Laser Eye,* 195 DPR 769, 787 (2016.

Lo acuerda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones